Slip Op. 10-88

UNITED STATES COURT OF INTERNATIONAL TRADE

```
---------------------------------------- :
                                         :
SHANDONG MACHINERY                       :
IMPORT & EXPORT COMPANY                  :
                                         :
            Plaintiff,                   :
                                         : Before: Richard K. Eaton, Judge
       v.                                :
                                         : Court No. 07-00355
UNITED STATES,                           :
                                         :
            Defendant,                   :
                                         :
       and                               :
                                         :
AMES TRUE TEMPER and                     :
COUNCIL TOOL COMPANY, INC.,              :
                                         :
            Def.-Ints.                   :
---------------------------------------- :
```

OPINION AND ORDER

[Department of Commerce's remand results remanded]

Dated: August 11, 2010

*Hume & Associates LLC* (*Robert T. Hume*) for plaintiff.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director; *Patricia M. McCarthy*, Assistant Director, Civil Division, Commercial Litigation Branch, United States Department of Justice (*Michael D. Panzera*); Office of Chief Counsel for Import Administration, United States Department of Commerce (*Shana Hofstetter*), of counsel, for defendant.

*Wiley Rein LLP* (*Timothy C. Brightbill* and *Maureen E. Thorson*), for defendant-intervenor Ames True Temper.

*Kelley Drye & Warren* (*Eric McClafferty* and *John M. Herrman II*), for defendant-intervenor Council Tool Company, Inc.

    Eaton, Judge:  This matter is before the court after remand to the Department of Commerce ("Commerce" or the "Department"). *See* Final Results of Redeterm. Pursuant to Court Remand (Dep't of Commerce Jan. 7, 2010)("Remand Results").  The Remand Results address the antidumping duty rate applied to hammers/sledges exported by plaintiff Shandong Machinery Import & Export Company ("SMC") in the fifteenth administrative review of antidumping duty orders covering heavy forged hand tools ("HFHTs") from the People's Republic of China ("PRC") for the period of review beginning on February 1, 2005, and ending on January 30, 2006 ("POR").  *See* HFHTs, Finished or Unfinished, With or Without Handles, From the PRC, 72 Fed. Reg. 51,787 (Dep't of Commerce Sept. 11, 2007) (final results) and the accompanying Issues and Decision Memorandum (Dep't of Commerce Sept. 4, 2007) ("Issues & Dec. Mem.") (collectively, "Final  Results").[1]

    In the Final Results, Commerce found that plaintiff failed to rebut the non-market economy ("NME") presumption of government control.[2]  As a result, Commerce applied a country-wide

---

[1]    United States imports of HFHTs are subject to individual antidumping duty orders covering separate categories of goods, including hammers/sledges.  Final Results, 72 Fed. Reg. at 51,787.

[2]    A non-market economy includes "any foreign country that the administering authority [Commerce] determines does not operate on market principles of cost or pricing structures, so that sales of merchandise in such country do not reflect the fair value of the merchandise."  19 U.S.C. § 1677(18)(A) (2006); *Shandong Huarong Gen. Group Corp. v. United States*, 28 CIT 1624,

Court No. 07-00355                                                Page 3

antidumping duty rate ("PRC-wide rate") to SMC's exports.  *See* Issues & Dec. Mem. at Comment 1; HFHTs, Finished or Unfinished, With or Without Handles, From the PRC, 72 Fed. Reg. 10,492 (Dep't of Commerce Mar. 8, 2007) ("Prelim. Results").  Commerce assigned, as the PRC-wide rate, using adverse facts available, 45.42 percent for hammers/sledges.  Final Results, 72 Fed. Reg. at 51,787.  In selecting a PRC-wide rate for hammers/sledges, Commerce used the 45.42 percent rate calculated as the best information available ("BIA")[3] rate during a 1991 less than fair value ("LTFV") investigation of the China National Machinery Import & Export Corporation.  *See* Issues & Dec. Mem. at Comment

---

1625 n.1, Slip Op. 04-117 (2004) (not reported in the Federal Supplement).

"Any determination that a foreign country is a nonmarket economy country shall remain in effect until revoked by the administering authority."  19 U.S.C. § 1677(18)(C)(i) (2006). The PRC has been determined to be an NME country.  The Department has treated the PRC as a non-market economy country in all past antidumping investigations. *Zhejiang Native Produce & Animal By-Products Imp. and Exp. Corp. v. United States*, 27 CIT 1827, 1834 n.14, Slip Op. 03-151 (2003) (not reported in the Federal Supplement) (citations omitted).

[3] BIA is the predecessor to the use of adverse facts available.  In the Statement of Administrative Action of the Uruguay Round Agreements Act of 1994, Pub.L. No. 103-465, 108 Stat. 4809 (1994), Congress explained that the Uruguay Round amended the prior law, which "mandate[d] use of the best information available (commonly referred to as BIA) if a person refuse[d] or [was] unable to produce information in a timely manner or in the form required." H.R. Doc. No. 103-316 (1994) at 868, reprinted in 1994 U.S.C.C.A.N. 4040, 4198. *Shandong Huarong Mach. Co. v. United States,* 30 CIT 1269, 1282 n.9, 435 F. Supp. 2d 1261, 1274 n.9 (2006).

Court No. 07-00355                                                    Page 4

3; HFHTs, Finished or Unfinished, With or Without Handles, From the PRC, 56 Fed. Reg. 241 (Dep't of Commerce Jan. 3, 1991) (final results).

Plaintiff SMC challenged the Final Results in this Court. *See Shandong Machinery Imp. & Exp. Co. v. United States*, 33 CIT __, Court No. 07-355, Slip Op. 09-64 (June 24, 2009) (not reported in the Federal Supplement)("*Shandong I*").  In *Shandong I*, the court sustained the Department's findings that a) SMC was not entitled to a separate rate because it failed to demonstrate that it was not owned or controlled by the PRC; and b) adverse facts available ("AFA")[4] should be applied to the PRC-wide entity, including SMC.[5]  However, the court remanded the rate assigned to hammers/sledges after finding that Commerce failed to corroborate the 45.42 percent rate because it was based on information that was not verified.  *Shandong I*, 33 CIT at __, Slip Op. 09-64 at 19-20;  *see* HFHTs, Finished or Unfinished, With or Without Handles, From the PRC, 56 Fed. Reg. at 241.  The court found:

> Rather than using verified information, the
> Department used information submitted by the
> petitioner.  Specifically, Commerce
> calculated an average of the margins
> contained in the petition for each class or

---

[4] When periodically reviewing and reassessing antidumping duties for an uncooperative party, Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." 19 U.S.C. § 1677e(b).

[5] The *Shandong I* court also sustained the margins assigned to the other hand tools at issue.

>     kind of merchandise, as adjusted for
>     calculation errors in the petition.
>     Therefore, Commerce took no steps to
>     corroborate the information during the LTFV
>     investigation.

*Shandong I*, 33 CIT at __, Slip Op. 09-64 at 20 (citation omitted).  Accordingly, the court found that the 45.42 percent rate was not reliable.  *Id*. at ___, Slip Op. 09-64 at 20 ("Consequently, the 45.42 percent rate is not reliable, and the court directs Commerce, on remand, to assign a different rate to hammers/sledges that has been corroborated according to its reliability and relevance to the country-wide entity as a whole.") (internal quotation omitted).

On January 7, 2010, Commerce issued its Remand Results.  In the Remand Results, Commerce applied a new PRC-wide rate of 109.16 percent based on a single transaction margin from SMC's 2004-2005 administrative review, i.e., the fourteenth administrative review.  *See* Remand Results at 11; Def.'s Resp. Comments Remand Determ. ("Def.'s Resp.") 3; *see also* Remand Results at 8 ("The Department next examined the transaction-specific rates of SMC from the most recent prior reviews, as SMC is part of the PRC-wide entity.").  Plaintiff now challenges the Remand Results.  *See* Pl.'s Comments Final Results Redeterm. Pursuant to Court Remand ("Pl.'s Comm.").  Defendant-intervenors Ames True Temper and the Council Tool Company, Inc. support the


Court No. 07-00355                                                  Page 6

Remand Results.  *See* Ames True Temper's Comments Supp. Final Results Redeterm. Pursuant to Court Remand ("Ames' Comm."); Def.-Int. Council Tool Co.'s Comments Final Results Redeterm. Pursuant to Court Remand ("Council Tool's Comm.").

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(B)(iii) (2006).  For the following reasons, the court remands the rate for hammers/sledges to Commerce for further findings consistent with this opinion.

## STANDARD OF REVIEW

When reviewing Commerce's final antidumping determinations, the court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

I.  Legal Framework

In seeking a PRC-wide rate based on AFA, the Department may use information derived from the petition, a final determination in the investigation, any prior administrative review, or any other information placed on the record.  *See* 19 U.S.C. § 1677e(b); Statement of Admin. Action accompanying the Uruguay Round Agreements Act, H.R. Rep. 103-316 at 870, reprinted in 1994

U.S.C.C.A.N. 4040, 4199 (stating that secondary information is "information derived from the petition that gave rise to the investigation or review, the final determination concerning the subject merchandise, or any previous review under [19 U.S.C. § 1675] concerning the subject merchandise").

Where, as here, Commerce relies on secondary information such as calculated rates from previous reviews, rather than information obtained in the course of a current investigation or review, the Department must "to the extent practicable, corroborate that information from independent sources that are reasonably at [its] disposal." 19 U.S.C. § 1677e(c); *see* 19 C.F.R. § 351.308(d). To corroborate secondary information, Commerce must "examine whether the secondary information to be used has probative value." *See* 19 C.F.R. § 351.308(d). Probative value means that the rate must be both a) reliable and b) relevant. *See Ferro Union, Inc. v. United States*, 23 CIT 178, 202, 44 F. Supp. 2d 1310, 1333 (1999) ("*Ferro Union*").

II. Remand Results

On remand, Commerce first examined the weighted average rates calculated for hammers/sledges in preceding segments of this proceeding and found that the highest calculated rate was 34.56 percent. Def.'s Resp. 8 (citing Remand Results at 8). Commerce determined that this rate, which was a partial AFA rate

for SMC, would be inappropriate as an AFA margin for the PRC-wide entity because assigning the 34.56 AFA rate "to the PRC-entity would also lead to the PRC-wide entity exporters, including SMC, obtaining a more favorable result by failing to cooperate than if they had cooperated fully."  Remand Results at 7-8.  Commerce thus turned to an examination of the transaction-specific antidumping margins of SMC's sales calculated from the fourteenth administrative review.  Def.'s Resp. 8 (citing Remand Results at 8).

These transaction-specific margins ranged from zero to 348 percent.  Def.'s Resp. 8 (citation omitted).  Commerce first stated that these transaction-specific margins could be used to corroborate the 45.42 AFA rate applied in the Final Results,[6] but that, because the court had instructed it to select a "different" rate, Commerce selected 109.16 percent, SMC's "single transaction-specific margin calculated in the prior review that is closest to and exceeds the original 45.42 percent AFA rate."  Remand Results at 9-10.

Commerce states that in choosing the 109.16 percent rate it

---

[6]   Specifically, Commerce states: "Since more than 98 percent of the positive individual transaction margins from the *2004-2005 Final Results* are higher than 45.42 percent, using individual transaction margins from the *2004-2005 Final Results* provides a sufficient basis to find the 45.42 percent rate has probative value and, thus, is corroborated within the meaning of the statute."  Remand Results at 9 (citation omitted).

has: (1) demonstrated that it was a calculated rate reflecting SMC's commercial activities from the prior year's administrative review; (2) explained that the rate is based on verified information from the same company; (3) determined that "the rate has not been found either unsupported by substantial evidence nor contrary to law by any court"; and (4) noted the data have not been challenged by any record evidence. Def.'s Resp. 9 (citing Remand Results at 10-11). While Commerce's efforts seemed designed to corroborate the rate as to SMC itself, the Department nonetheless found that the 109.16 percent rate was an appropriate AFA PRC-wide rate.

In response, plaintiff argues, *inter alia*, that the margin is not supported by substantial evidence or otherwise in accordance with law, and that the rate is punitive. *See* Pl.'s Comm. 9-14.

III. The Hammers/Sledges Rate Selected on Remand is Aberrational and Punitive

The court finds that the selected rate is aberrational and punitive.[7] The Federal Circuit teaches that an AFA rate must be "a reasonably accurate estimate of the respondent's actual rate,

---

[7] Because the court finds the rate to be aberrational and punitive, and thus must be remanded, it need not address plaintiff's other arguments as to the inadequacies of the selected rate.

albeit with some built-in increase intended as a deterrent to non-compliance." *F.LLI De Cecco Di Fillippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000) ("*De Cecco*"). That the Department's new rate of 109.16 percent goes beyond the Federal Circuit's guidance can be seen from the Department's previous findings in this case. Specifically, Commerce determined in the Final Results that the 45.42 percent rate it chose was sufficient to ensure future compliance:

> The Department's practice when selecting an adverse rate from among the possible sources of information is to ensure that the margin is sufficiently adverse so "as to effectuate the purpose of the facts available role to induce respondents to provide the Department with complete and accurate information in a timely manner."

*See* Issues & Dec. Mem. at Comment 3 (citation omitted). If a rate of 45.42 percent has been found by Commerce to fulfill the goal of ensuring compliance, then a rate of over twice as much must necessarily be punitive. "[T]he purpose of [the statute governing adverse inferences] is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins." *De Cecco*, 216 F.3d at 1032; *see Timken Co. v. United States*, 26 CIT 1072, 1076, 240 F. Supp. 2d 1228, 1234 (2002), *aff'd*, 354 F.3d 1334 (Fed. Cir. 2004)(in choosing a margin, Commerce must "appropriately balanc[e] th[e] goal of accuracy against the risk of creating a punitive margin");

*Gallant Ocean (Thailand) Co., Ltd. v. United States*, 602 F. 3d 1319, 1324 (Fed. Cir. 2010).


CONCLUSION

The court therefore remands this matter to Commerce to determine a non-punitive PRC-wide rate for hammers/sledges. In its Remand Results, Commerce states that it is able to corroborate the 45.42 percent rate:

> the Department believes that had the Court permitted the Department another opportunity to corroborate the 45.42 percent [rate] we would have concluded that these individual transaction margins from the administrative review of SMC, covering the period February 1, 2004, through January 31, 2005, corroborate the 45.42 percent rate applied to the country-wide entity as a whole.

Remand Results at 8-9 (citation omitted). If Commerce is capable of corroborating the 45.42 percent rate, then it may endeavor to do so on remand. The Department shall be mindful, however, that whatever rate it finds must be in accord with its previous finding that the rate of 45.42 percent is sufficient to ensure compliance. Should the Department wish, it may reopen the record and calculate an AFA rate to be applied to the PRC-wide entity for sales of hammers/sledges, with an additional amount to deter future non-compliance.

The remand results shall be due on December 10, 2010;

Court No. 07-00355                                                    Page 12

comments to the remand results shall be due on January 31, 2011;

and replies to such comments shall be due on February 22, 2011.


                                                     /s/ Richard K. Eaton  
                                                      Richard K. Eaton

Dated:    August 11, 2010  
          New York, New York

# NOTICE OF ENTRY AND SERVICE

     This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

     Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

     Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

                                         Tina Potuto Kimble
                                         Clerk of the Court

Date: _____   By: _____
                                                                 Deputy Clerk